UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ERIKA VILLEGAS ANDINO,

              Plaintiff,

              - against -

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-1780 (PKC)

PAMELA K. CHEN, United States District Judge:

Plaintiff Erika Villegas Andino brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the decision made by the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's claim for Supplemental Security Income ("SSI"). Before the Court are the parties' cross-motions for judgment on the pleadings. (Dkts. 19, 24.) For the following reasons, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. This case is remanded for further proceedings consistent with this Memorandum & Order.

## BACKGROUND

**I.    Procedural History**

On September 30, 2013, Plaintiff filed an application with the SSA for SSI, in which she alleged she had been disabled as of September 1, 2012 due to morbid obesity, chronic lower back

pain, GERD,[1] and dyslipidemia.[2]  (Administrative Transcript ("Tr."), Dkt. 18, at ECF[3] 261–63.) On January 31, 2014, her application was denied.  (*Id.* at ECF 240–44.)  After requesting a hearing (*id.* at ECF 248–49), Plaintiff appeared before Administrative Law Judge David Tobias (the "ALJ") on March 22, 2016 (*id.* at ECF 215–39).  In a decision dated September 12, 2016, the ALJ determined that Plaintiff was not disabled and was therefore not entitled to SSI.  (*Id.* at ECF 84–95.)  On November 18, 2017, the ALJ's decision became final when the Appeals Council of the SSA's Office of Disability Adjudication and Review denied Plaintiff's request for review of the ALJ's decision.  (*Id.* at ECF 70–72.)  Thereafter, Plaintiff timely[4] commenced this action.

---

[1] Gastroesophageal reflux disease or "GERD" is "a common condition in which the gastric contents move up into the esophagus.  The reflux becomes a disease when it causes frequent or severe symptoms of injury."  *Cook v. Colvin*, No. 13-CV-1946 (TPG), 2015 WL 5155720, at *2 n.3 (S.D.N.Y. Sept. 2, 2015).

[2] "Dyslipidemia is abnormality in, or abnormal amounts of, lipids or lipoproteins in the blood."  *Scott v. Astrue*, No. 09-CV-3999 (KAM) (RLM), 2010 WL 2736879, at *3 n.24 (E.D.N.Y. July 9, 2010).

[3] "ECF" refers to the "PageID" number generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[4] Section 405(g) provides that:

> [a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the claimant makes a reasonable showing to the contrary."  *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  Applying this standard, the Court determines that Plaintiff received the Commissioner's final decision on November 23, 2017 and notes that Plaintiff filed the instant action on January 19, 2018—57 days later.  (*See generally* Complaint, Dkt. 1.)

## II. The ALJ Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps of the inquiry; the Commissioner bears the burden in the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the answer is no, the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled. In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 30, 2013 and that Plaintiff suffered from the following severe impairments: mood disorder, cervical and lumbar spine degenerative disc disease, left knee mild degenerative joint disease, "arthritis/myalgia/arthralgia," and obesity. (Tr., Dkt. 18, at ECF 86–87.)

Having determined that Plaintiff satisfied her burden at the first two steps, the ALJ proceeded to the third step, at which the ALJ considers whether any of the claimant's impairments meet or equal one of the impairments listed in the Social Security Act's regulations (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1. In this case, the ALJ concluded that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr., at ECF 87–89.) Moving on to the fourth step, the

ALJ found that Plaintiff had the residual functional capacity ("RFC")[5] to perform "light work" as defined in 20 C.F.R. § 416.967(b).[6] (*Id.* at ECF 89–93.) Qualifying his RFC determination, the ALJ noted that Plaintiff "is limited to work that does not involve more than occasional, superficial interaction with co[-]workers or the public, and she is limited to work that does not require the ability to carry out complex tasks or instructions." (Tr., Dkt. 18, at ECF 89.)

After clarifying that Plaintiff had no past relevant work experience (*id.* at ECF 93), the ALJ proceeded to step five. At step five, the ALJ must determine whether the claimant—given her RFC, age, education, and work experience—has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In this case, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of performing, namely, "presser, cafeteria attendant, and assembler (small products)." (Tr., Dkt. 18, at ECF 94.)

---

[5] To determine the claimant's RFC, the ALJ must consider the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1).

[6] According to the applicable regulations,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of times.

20 C.F.R. § 416.967(b).

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*, 697 F.3d at 151 (quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quotations and brackets omitted). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, the Court "defer[s] to the Commissioner's resolution of conflicting evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) substituting his own opinion for that of a medical professional without deferring to Plaintiff's treating physician and properly developing the record, and (2) failing to properly explain his evaluation of Plaintiff's credibility. (Plaintiff's Brief ("Pl.'s Br."), Dkt. 20, at ECF 1332–48.) The Court addresses each argument in turn.

## I. Treating Physician Rule

### A. Dr. Maria Almonte

The Court holds that remand is required to enable the ALJ to properly assess the medical opinion provided by Dr. Maria Almonte, Plaintiff's treating physician from 2011 through 2014. (*See, e.g.*, Tr., Dkt. 18, at ECF 364, 395, 463, 466, 506, 1040.) On June 22, 2013, Dr. Almonte examined Plaintiff and diagnosed her with morbid obesity, chronic lower back pain, allergic rhinitis,[7] GERD, and dyslipidemia. (*Id.* at ECF 457.) During this time, Dr. Almonte filled out a report confirming that Plaintiff was "unable to work for at least 12 months." (*Id.* at ECF 458.) The ALJ gave Dr. Almonte's findings "little weight," reasoning as follows:

> In June 2013, Dr. Maria Almonte, M.D., reported [that Plaintiff] suffers from obesity, chronic lumbar pain, allergic rhinitis, GERD, and hyperlipidemia. Dr. Almonte opined [Plaintiff] cannot work for 12 months. This opinion is given little weight because (1) [Plaintiff]'s independence with activities of daily living, and (2) [Plaintiff's]'s treatment notes from 2013 to 2016 showing mostly normal strength findings, gait findings, musculoskeletal findings, and neurologic findings all suggest [Plaintiff] can perform work at the RFC.

(*Id.* at ECF 91 (citations omitted).)

In deciding to discount the medical opinion provided by Dr. Almonte, the ALJ improperly substituted his own scientific analysis for that of a medical professional. "With respect to the nature and severity of a claimant's impairments, the SSA recognizes a treating physician rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."[8]

---

[7] "Allergic rhinitis," which "is rhinitis associated with hay fever," manifests through "sneezing, rhinorrhea, nasal congestion, pruritus of the nose, ears, [and] palate" and "may also occur concurrently with allergic conjunctivitis." *LaFerrera o/b/o M.J.S. v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 308, 319 n.25 (E.D.N.Y. 2017).

[8] Although "[t]he current version of the [Social Security Act]'s regulations eliminates the treating physician rule," the rule nevertheless applies to Plaintiff's claim, which was initially filed on September 30, 2013, as the current regulations only "apply to cases filed on or after March 27,

*Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quotations, brackets, and citations omitted).

As the Second Circuit has explained:

> An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion. Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the [SSA's] attention that tend to support or contradict the opinion. The regulations also specify that the Commissioner will always give good reasons in her notice of determination or decision for the weight she gives [the] claimant's treating source's opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations, quotations, and brackets omitted).

The Court concludes that remand is required to enable the ALJ to solicit the necessary information from Dr. Almonte to address the perceived deficiencies in her medical reports. As courts in this Circuit have held, "the ALJ must make every reasonable effort to help an applicant get medical reports from [her] medical sources" and "must seek additional evidence or clarification when the report from the claimant's medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010) (quotations and brackets omitted); *see also Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) ("Legal errors regarding the duty to develop the record warrant remand." (collecting cases)). Once the ALJ concluded that Dr. Almonte's medical reports contained deficiencies, *e.g.*, that her conclusions about Plaintiff's physical limitations were undermined by Plaintiff's treatment notes from 2013 through 2016 (Tr., Dkt. 18, at ECF 91), the ALJ incurred an affirmative obligation to "seek clarification and additional information from [Dr.

---

2017." *Burkard v. Comm'r of Soc. Sec.*, No. 17-CV-290 (EAW), 2018 WL 3630120, at *3 n.2 (W.D.N.Y. July 31, 2018); 20 C.F.R. § 404.1520(c).

7

Almonte] to fill any clear gaps before dismissing the doctor's opinion." *See Calzada*, 753 F. Supp. 2d at 269. In other words, if the ALJ wanted to disregard Dr. Almonte's medical opinion, the ALJ needed to first ask Dr. Almonte to clarify the deficiencies the ALJ perceived in that opinion.

While an ALJ is entitled to disregard the opinion of a claimant's treating physician after giving the physician the opportunity to correct the deficiencies in her medical reports, the ALJ must make clear that this decision is based on conclusions made by a medical professional. *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion."). "Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." *Hillsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010). In this case, the ALJ's conclusion that Plaintiff's "independence with activities of daily living" and treatment notes "showing mostly normal strength findings, gait findings, musculoskeletal findings, and neurologic findings" sufficed to undermine the credibility of Dr. Almonte's medical opinion was therefore improper. (Tr., Dkt. 18, at ECF 91.) *See Indelicato v. Colvin*, No. 13-CV-4553 (JG), 2014 WL 674395, at *3 (E.D.N.Y. Feb. 21, 2014) (noting that "an ALJ is not a doctor, and therefore is not equipped to make medical judgments"); *Beckers v. Colvin*, 38 F. Supp. 3d 362, 374–75 (W.D.N.Y. 2014) ("It is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination. Nor is it appropriate for an ALJ to substitute his own opinion for the findings of medical sources on the record." (quotation and citation omitted)).

Accordingly, the Court remands this case back to the ALJ so he can solicit clarification from Dr. Almonte to enable a proper assessment of Dr. Almonte's medical opinion. *See Burgess*,

537 F.3d at 129 ("In light of the ALJ's affirmative duty to develop the administrative record, an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." (quotation omitted)); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) ("Even when a claimant is represented by counsel, it is the well-established rule in our circuit that the social security ALJ, unlike the judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." (quotation and ellipsis omitted)).

### B. Dr. Jorge Orellana

The Court also finds that remand is required to allow the ALJ to solicit the medical opinion of Dr. Jorge Orellana, who Plaintiff alleges became her treating physician after Plaintiff stopped seeing Dr. Almonte in 2014. (*See* Pl.'s Br., Dkt. 20, at ECF 1325, 1327.) In deciding whether a doctor was a social security claimant's treating physician during the relevant time period, "the ALJ has 'an affirmative obligation to develop the administrative record.'" *Vogel v. Colvin*, No. 12-CV-3111 (FB), 2013 WL 5566108, at *4 (E.D.N.Y. Oct. 9, 2013) (quoting *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999)). Here, the ALJ did not even reference the medical treatment provided by Dr. Orellana, who submitted treatment notes to the ALJ indicating that he examined Plaintiff several times in 2015 and 2016. (Tr., Dkt. 18, at ECF 1222, 1241, 1308–09.)

Because the ALJ failed to (1) determine whether Dr. Orellana was Plaintiff's treating physician once Plaintiff stopped seeing Dr. Almonte, or (2) solicit Dr. Orellana's medical opinion in the event that the ALJ determined that he was, in fact, Plaintiff's treating physician, remand is required. *See Jackson v. Colvin*, No. 13-CV-5655 (AJN) (SN), 2014 WL 4695080, at *19 (S.D.N.Y. Sept. 3, 2014) (remanding where the ALJ failed to discharge his "affirmative duty to develop the record fully by obtaining an opinion from [the plaintiff's] . . . treating physician");

9

*Tirado v. Astrue*, No. 10-CV-2482 (ARR), 2012 WL 259914, at *5 (E.D.N.Y. Jan. 25, 2012) (holding that the ALJ "erred in neglecting to solicit an opinion" from the plaintiff's "treating physician specialist[] as to [the] plaintiff's residual functional capacity"). Accordingly, under these circumstances, it is "appropriate for this Court to remand this case to the ALJ to make an explicit and supported determination as to whether Dr. [Orellana] was Plaintiff's treating physician" during the relevant time period. *Brathwaite v. Barnhart*, No. 04-CV-2850 (GBD) (DF), 2007 WL 5322447, at *12 (S.D.N.Y. Dec. 20, 2007); *see id.* at *11–12 (remanding for further proceedings where "the question of whether [a physician] should have been considered a 'treating physician,' whose opinion should be accorded 'controlling' or at least significant weight," was unresolved in the administrative transcript).

## II. Plaintiff's Credibility

Testifying before the ALJ, Plaintiff explained that she "cannot work because her pain has worsened," "cannot work also due to her emotional state," "is socially isolated at times and has difficulty concentrating," and "suffers from knee pain." (Tr., Dkt. 18, at ECF 93, 222–39.) The ALJ accorded these statements limited weight, reasoning that they were inconsistent with certain medical evidence. (*See id.* at ECF 89, 93.)

"The ALJ must follow a two-step process to evaluate a claimant's assertions of pain and other symptoms." *Cabassa v. Astrue*, No. 11-CV-1449 (KAM), 2012 WL 2202951, at *13 (E.D.N.Y. June 13, 2012). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Grenier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). In this case, the ALJ properly determined that Plaintiff's obesity, mental

10

problems, back pain, and knee pain could reasonably be expected to cause her symptoms. (Tr., Dkt. 18, at ECF 89.) The ALJ then proceeded to the second step, at which the ALJ must consider

> the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about [her] impairment(s), [her] restrictions, [her] daily activities, [her] efforts at work, or any other relevant statements [she] makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Grenier*, 606 F.3d at 49 (quotations, brackets, and citations omitted).

The Court holds that remand is required to enable the ALJ to engage in the proper analysis before deciding how much to credit Plaintiff's statements about her own pain. The relevant regulations set out a seven-factor test to evaluate a claimant's own subjective statements regarding pain. *See* 20 C.F.R. § 404.1529(c)(3).[9] In this case, the ALJ determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr., Dkt. 18, at ECF 89.) Concluding that Plaintiff's testimony was not "fully consistent with the evidence," the ALJ reasoned that:

> (1) [Plaintiff]'s treatment notes showing mostly normal strength, neurologic, and musculoskeletal findings, (2) the X-ray results showing some degenerative changes but no fractures or herniations, (3) [Plaintiff]'s psychiatric treatment notes noting mostly normal mental status examination findings, (4) [Plaintiff]'s work activity after the alleged onset date, (5) [Plaintiff]'s general independence with activities of daily living, and (6) her ability to perform childcare duties for her grandchildren (testimony) all suggest [Plaintiff] has greater functional abilities than she alleges and support the finding [Plaintiff] can perform work at the RFC.

---

[9] These are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of her pain or other symptoms; (6) any measures the claimant uses or has used to relieve her pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

(*Id.* at ECF 93.)

Although the ALJ specifically identified one of the § 401.1529(c)(3) factors—*i.e.*, Plaintiff's daily activities—and arguably "other factors" in the form of Plaintiff's medical and psychiatric status and treatment, he failed to explicitly analyze any of the other enumerated § 401.1529(c)(3) factors in relation to Plaintiff's statements regarding her own pain.[10] While the Court does not find that this issue itself warrants remand, the Court nonetheless recommends that the ALJ conduct a new credibility determination on remand. *See Hudson v. Berryhill*, No. 17-CV-463 (MAT), 2018 WL 4550310, at *6 (W.D.N.Y. Sept. 21, 2018) (explaining that an ALJ cannot "reject the claimant's statements about the intensity and persistence of her pain or other symptoms or about the effect her symptoms have on her ability to work solely because the available objective evidence does not substantiate the claimant's statements" (quotations and brackets omitted)); *Felder v. Astrue*, No. 10-CV-5747 (DLI), 2012 WL 3993594, at *13 (E.D.N.Y. Sept. 11, 2012) ("The Court finds the ALJ erred when she failed to properly apply the required seven factors set forth in 20 C.F.R. § 404.1529 in making her credibility determination. Accordingly, the matter also is remanded with instruction to conduct a new credibility determination."); *Tornatore v. Barnhart*, No. 05-CV-6858 (GEL), 2006 WL 3714649, at *6 (S.D.N.Y. Dec. 12, 2006) (remanding because the ALJ considered some, but not all, of the seven factors).

---

[10] The Court notes that Plaintiff's ability to perform some childcare duties for her grandchildren was not itself sufficient to reject her subjective claims of pain. *See Bodden v. Colvin*, No. 14-CV-8731 (SN), 2015 WL 8757129, at *12 (S.D.N.Y. Dec. 14, 2015) (holding that, "[a]lthough the treatment records support[ed] the ALJ's finding that [the claimant] was generally able to perform all basic activities of daily living, including doing the laundry, taking her children to school, performing household chores, and cooking for her family," these facts alone could not "support a finding that [the claimant] was capable of working 40 hours a week in a competitive work environment").

12

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Memorandum & Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

                                                    SO ORDERED.

                                              */s/ Pamela K. Chen*
                                              Pamela K. Chen
                                              United States District Judge

Dated: September 19, 2019
       Brooklyn, New York